JOSEFINA PRIETO, Plaintiff and Appellant, *v.* HULL DOBBS COMPANY OF PUERTO RICO, Defendant and Appellee.

No. AP-62-39.     Decided May 17, 1963.

---

*Carmelo Avila Medina* for appellant. *B. Sánchez Castaño, R. Rivero Cervera, Carlos R. Vélez,* and *Ana R. Rodríguez Olazagasti* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On August 3, 1955, Josefina Prieto, appellant herein, went to appellee's business premises at Stop 23, Santurce, in her Ford automobile, license plate P-46-985, devoted to taxi business, in the company of a mechanic and of the driver of said taxi, Ángel Colón, for the purpose of trading her vehicle for another. She was waited on by Mr. Mora, appellee's salesman. Appellant picked out a used automobile of those which were there for sale, asked her mechanic to try it, and in turn Mora, who was a mechanic but had no obligation to inspect vehicles (T.E. p. 46), tried hers. Mora testified that the salesmen make the proposition for the sale of automobiles, but the papers are not accepted until they are signed by the man-

ager (T.E. p. 45); that ". . . but after the salesman makes the deal, the manager (in this case Joaquín García) says: 'Let me see the papers.' Then he goes down to take a look at the car in order to determine whether it is actually worth that much. If he thinks it does, he says: 'All right.' " (T.E. p. 53). They agreed upon the price of $2,300 for appellee's vehicle, and in order to pay it appellant's vehicle was valued at $1,500 and she was required to pay $100 in cash, which she did. A purchase order was partly filled out (appellee's Exh. 1) and signed by Mrs. Prieto, but it was not signed by anyone in appellee's name, nor was it accepted by any finance company. These two requirements are printed in English on said order. Appellant testified that upon her mechanic's advice she talked with the manager of appellee's business, Joaquín García, as a result of which the latter raised the price of the automobile traded in so that apparently she was making a down payment of $1,700. Thereupon she signed four or five papers of which no copy was delivered to her. The license plates were then changed from one vehicle to the other and appellant took with her both of them, changed the meter and the screen of the vehicle which she thought she had traded in to the other which she thought she had acquired, and "Prieto Taxi" was printed on one of the front doors and the taxi number on the trunk of the car.

The following day Mrs. Prieto went back to appellee's business taking with her both automobiles for the purpose of picking up an employee of the latter who was to accompany her to the Public Service Commission in order to change the license plate. On this occasion García asked her to hand him the key of the car object of the transaction, which she did, and when she inquired the reason García informed her that the deal was off. According to Mora, the transaction was approved on August 3, 1954 (T.E. p. 45), but the following day, when appellant went back, García called a mechanic to inspect the vehicle which she "had traded in," and the latter

told him that the rods were burnt; that García tried it and told appellant "that the rods of that car were burnt and that the deal was off" (T.E. p. 47). García again ordered that the screen and the meter be changed from one vehicle to the other. As a result of this García and appellant Prieto engaged in a heated argument. She left the place leaving both automobiles at the premises. About one week later (T.E. p. 30) an employee of appellee took appellant's originally owned vehicle to the front of her residence and left it there. He left the switch with a neighbor to be delivered to appellant.

Mrs. Prieto testified that the original purchase order was no good, since "new papers were filled in" when the adjustment was made with García and that he retained them (T.E. p. 36). Regarding the copy of the original order, she testified that ". . . that was in the garbage can and I took it out and started to scribble on it" (T.E. p. 37). The copy admitted as appellee's evidence is not "scribbled on." They did not return the $100 to her. She did not use the automobile returned to her any more, but on or about December 20 she presumably "started to use" the taxi permit on another vehicle (T.E. p. 32). In view of these facts, appellant sued the appellee for breach of contract and damages.

The trial court concluded that the transaction in question was based on a purchase order admitted in evidence, except that the price was changed so that instead of crediting $1,500 for the old vehicle she was credited with $1,600 plus $100 which she paid in cash; that the requirements set forth in the order that it be signed by appellee and approved by the finance company were not met; that the obligation arises when such condition precedent is met, and if it is not met "the legal nexus is not created"; that even assuming that the salesmen had authority to bind appellee, there was no contract between the parties, since it was not established how and when appellant was going to pay to appellee the balance between $2,300 and $1,700 which she still owed;

and lastly, that appellant is entitled to refund of the $100 which she paid with the original order. The court dismissed the complaint and ordered appellant to pay the costs plus $500 for attorney's fees, and appellee to refund the sum of $100 to appellant.

Feeling aggrieved, appellant appealed to this Court on August 10, 1955, the case having been submitted for consideration in November 1962. Appellant contends that the trial court committed two errors, to wit: (1) in holding that the efficacy and validity of the contract in question depended on the signature and acceptance by appellee and by a finance company as to the deferred balance; and (2) in concluding that "there was no contract between the parties in this case since there is no evidence as to how and when plaintiff was going to pay to defendant the balance between the price of $2,300 and $1,700."

In our opinion, the evidence shows that there was an agreement between the parties as to the object and price of the contract and delivery of the thing. The fact that the evidence fails to show the form and manner agreed upon for payment by appellant of the unpaid balance of the price of $2,300, namely, $600, does not mean that there was no meeting of minds between the parties, since it is evident from the circumstances of the case and from the custom and uses in this type of business that appellant would pay such sum in instalments, in which case the courts may fix the duration. Civil Code, § 1081, 31 L.P.R.A. § 3064; *Sánchez v. De Choudens*, 76 P.R.R. 1, 10 (1954); *Rivera v. Cardona*, 56 P.R.R. 786, 790 (1940); *Jiménez v. Ramos*, 51 P.R.R. 375 (1937); *Armstrong v. Jones*, 44 P.R.R. 739 (1933); *Seoane v. Cortés*, 40 P.R.R. 69 (1929); and *Nicorelli v. Ernesto López & Co.*, 26 P.R.R. 49 (1917). The transaction was originally based on the aforesaid purchase order, except that the order was not filled in completely and, as we shall presently see, it was actually called off. In the process of

adjusting the price for the purpose of reducing it by $100, that is, to credit $1,600 instead of $1,500 for appellant's old vehicle, García, with apparent authority and appellee's duty to the public as its agent therefor, *cf. Arias* v. *Torres*, 78 P.R.R. 178 (1955); *Castro* v. *Payco, Inc.*, 75 P.R.R. 59 (1953); *Fajardo* v. *Schlüter & Co., Succrs.*, 43 P.R.R. 263 (1932), *Cayuga Linen, etc., Inc.* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 462 (1930); *Torres* v. *Porto Rico Racing Corporation*, 40 P.R.R. 423 (1930); *Fuentes* v. *Ganetty*, 39 P.R.R. 160 (1929), perfected the contract with respect to the transaction originally involved in said order. Civil Code, § 1339— 31 L.P.R.A. § 3746; *West India Oil Co. (P.R.)* v. *Treasurer*, 54 P.R.R. 695, 704 (1939); *Benítez* v. *Llompart*, 50 P.R.R. 641, 649 (1936); *Boneta* v. *Boneta et al.*, 27 P.R.R. 633 (1919); XXIII Scaevola, *Código Civil* 315.

■■ We already said that defendant's Exh. 1, which is the order in question signed by appellant only, was called off by the parties. This conclusion is based on the considerations which follow. The so-called purchaser's order is a form prepared by appellee and should therefore be considered and restrictively construed as respects the latter. *Torres* v. *P.R. Racing Corporation, supra.* It is significant that the part thereof referring to appellee's vehicle which the customer proposes to buy is printed in English and Spanish, but the latter part, referring to the vehicle which the customer owns and wishes to trade in to appellee in order that the price thereof be credited to the former vehicle, and which contains the clause providing that the order is not valid if it is not signed and accepted by appellee and by a finance company, is printed *only* in English. In the present case the blanks in this part of the order were not filled in, nor was the space for the date of the order filled in. In other words, it seems that appellee wanted to make sure that the customer had indubitably a clear understanding of the terms of purchase

of appellee's vehicle, but not so as to the latter part of said order, especially since the evidence shows that appellee's agents led appellant unmistakably to believe that a contract of purchase had been perfected between the parties. *Cf. Millán* v. *Caribe Motors Corp.*, 83 P.R.R. 474 (1961). Appellant testified that the price was adjusted and other papers were signed copy of which was not given to her at the time of the subsequent and final transaction. This testimony was not rebutted nor was any evidence presented by appellee which would in some way question that testimony. The vehicle purchased was then delivered to appellant and she was asked to come the following day in order that one of appellee's agents would accompany her to the Public Service Commission for the purpose of changing the license plates. In view of these circumstances, the fact that García informed appellant the next day in connection with the transaction that "the rods of the car were burnt and that the deal was off," constituted in law, in our judgment, an attempt to desist from a perfected contract by reason of a fault or hidden defect (§§ 1373, 1374 and 1375 of the Civil Code, 31 L.P.R.A. §§ 3841, 3842 and 3843), a question which was not subsequently alleged as a defense in the case under consideration, nor was any evidence offered to show the existence of such a situation to allege that appellee had justifiedly desisted from the contract.

◼ In view of the foregoing, we are bound to conclude that appellee is guilty of breach of contract and that its action in defending itself in this suit is manifestly obstinate.

Appellant established the damages sustained as a result of the breach of contract consisting in the privation during one week of her automobile from which she realized a net profit of $20 a day. Her damages therefore amount to $140.

The judgment will be reversed and another rendered instead ordering appellee to pay to appellant $140 for such damages, to refund the sum of $100 which appellant paid

to appellee to be credited to the selling price and which was not returned to her, plus costs and $300 for attorney's fees.